# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-0552-

MICHAEL J. SIPOS, and
GARY D. SMITH,

      Plaintiffs,

v.

FLIGHTSAFETY SERVICES CORPORATION, and
DELAWARE RESOURCE GROUP OF OKLAHOMA, LLC,

      Defendants.

## COMPLAINT

Michael J. Sipos and Gary D. Smith (collectively Plaintiffs), two veterans of the United States Air Force, through counsel, the United States Department of Justice, file a complaint for violations of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") against FlightSafety Services Corporation ("FlightSafety") and Delaware Resource Group of Oklahoma, LLC ("DRG").

## JURISDICTION

1.     This Court has jurisdiction over this action pursuant to USERRA, 38 U.S.C. § 4323(b)(3).

## VENUE

2.     Venue is proper in this District because FlightSafety maintains a place of business in Centennial, Colorado. 38 U.S.C. § 4323(c)(2).

3.     In the alternative, venue is also proper in this District because a substantial part of the events giving rise to the claims occurred in Colorado, 28 U.S.C. § 1391(b), and FlightSafety and DRG are subject to personal jurisdiction in Colorado. *Id.* § 1391(c).

## PARTIES

4. Plaintiff Michael J. Sipos is an individual and a citizen of New Jersey.

5. Plaintiff Gary D. Smith is an individual and a citizen of Massachusetts.

6. FlightSafety, a Delaware corporation, is registered to conduct business in Colorado and has its principal place of business in Centennial, Colorado.

7. DRG is an Oklahoma company under Native American ownership that does business in Colorado through a contract with FlightSafety.

## FACTUAL ALLEGATIONS

### A. Mr. Sipos.

8. Mr. Sipos, a retired Air Force reservist, is a KC-10 Extender pilot. The KC-10 Extender is an air mobility command advanced tanker and cargo aircraft designed to provide increased global mobility for U.S. armed forces.

9. Mr. Sipos began working for FlightSafety in October 2006 as a KC-10 Extender pilot instructor at the McGuire Air Force Base ("McGuire AFB") in New Jersey.

10. At all relevant times, FlightSafety has had a contract with the Air Force for the KC-10 Aircrew Training System ("KC-10 ATS"), which is used to train KC-10 pilots, co-pilots, flight engineers, loadmasters, and maintenance engine run personnel.

11. FlightSafety uses instructors like Mr. Sipos, who use the Air Force's facilities and equipment to train KC-10 crews on aircraft flight manuals, operations, rules, instructions, regulations, performance standards, tactics, techniques and procedures associated with the aircraft.

12. Shortly after beginning his employment with FlightSafety, the Air Force placed Mr. Sipos on active duty, in support of Operation Enduring Freedom and Operation Iraqi Freedom between November 4, 2006, and June 4, 2010.

13. At the time he deployed, Mr. Sipos was a participant in FlightSafety's 401(k) plan.

14. Under FlightSafety's 401(k) plan, FlightSafety matches an employee's contribution equal to 50 percent of the 401(k) contributions made for the contribution period on behalf of a participating employee.

15. FlightSafety's matching contributions may not exceed four percent of the participating employee's compensation during a plan year, which is defined as a 12-consecutive-month period ending each December 31.

16. FlightSafety's 401(k) plan essentially provides a four percent matching contribution when an employee contributes eight percent of his compensation.

17. At all relevant times prior to his deployment, Mr. Sipos contributed eight percent of his compensation to FlightSafety's 401(k) plan, and FlightSafety provided a four percent match to the same.

18. When he returned to FlightSafety after his active duty assignment, Mr. Sipos signed a military leave catch-up contribution form to make catch-up contributions to the 401(k) plan for the missed contributions he did not make while he was on active duty.

19. Mr. Sipos agreed to contribute $202.81 per pay period for 130 payments, with a FlightSafety match of $101.40 per pay period, to the 401(k) plan for the contributions he missed while he was on active duty.

20. Mr. Sipos made catch-up contributions to the 401(k) plan between December 3, 2010, and June 30, 2011.

21. In or around June 2011, as a condition of renewal of the KC-10 ATS contract with the Air Force, FlightSafety agreed to subcontract a portion of the contract to a minority-owned company. FlightSafety chose DRG, a company under Native American ownership.

22. Under the subcontract with FlightSafety, DRG agreed to hire incumbent KC-10 ATS instructors such as Mr. Sipos. As a result, on or about July 14, 2011, FlightSafety administratively

terminated Mr. Sipos' employment and the next day he became an employee of DRG. As a DRG employee he continued to perform the same duties, in the same location, and under the same working conditions as he had with FlightSafety.

23. FlightSafety also terminated all of Mr. Sipos' benefits, including the 401(k) plan, and Mr. Sipos was unable to continue to make catch-up contributions to the FlightSafety 401(k) plan.

24. On September 27, 2011, Mr. Sipos contacted the FlightSafety 401(k) plan administrator seeking to make a lump sum catch-up contribution that would count toward the contributions he missed while he was on active duty. The plan administrator told Mr. Sipos that the plan would not accept a lump sum catch up contribution.

25. FlightSafety has retained control over Mr. Sipos' employment opportunities as a DRG employee.

26. FlightSafety's "site manager," who is located at McGuire AFB, exercises "operational control" and directs the daily activities of DRG personnel (including Mr. Sipos), such as scheduling duties, assigning tasks, and directing the actions of DRG employees.

27. FlightSafety's site manager currently supervises Mr. Sipos' daily activities and previously supervised Mr. Sipos' daily activities when he was directly employed by FlightSafety.

28. Upon information and belief, FlightSafety, through the site manager, controls the decision of whether DRG employees (including Mr. Sipos) will be disciplined. Under the operational agreement between FlightSafety and DRG, FlightSafety notifies DRG management regarding any DRG personnel behavior correction or counseling requirements, which DRG is then expected to implement.

29. The FlightSafety site manager continues to evaluate Mr. Sipos' performance as a pilot instructor, using a form called "instructor observation record."

30. FligthSafety also exercises control over DRG employees' leave requests. The FlightSafety site manager at McGuire AFB approves Mr. Sipos' vacation time and other types of leave.

31. Upon information and belief, FlightSafety controls whether DRG instructors (including Mr. Sipos) work overtime, or even whether DRG should hire additional part-time personnel.

32. There is also a substantial continuity of business operations at McGuire AFB between FlightSafety and DRG.

33. DRG provides the same services to the Airforce as FlightSafety at the same facility — McGuire AFB — using the same equipment. Both FlightSafety and DRG employed or employ KC-10 ATS to train KC-10 pilots, co-pilots, flight engineers, loadmasters, and maintenance engine run personnel.

34. There is a continuity of workforce between FlightSafety and DRG at McGuire AFB; DRG hired a substantial number of incumbent FligthSafety KC-10 ATS employees to continue to do the same work for DRG as they did for FlightSafety.

35. On November 7, 2011, Mr. Sipos filed a complaint under USERRA with the United States Department of Labor ("DOL") alleging that he was denied the opportunity to make catch-up contributions to his 401(k) plan in violation of USERRA.

36. The DOL's Veterans' Employment and Training Service conducted an investigation, and found that Mr. Sipos' claim had merit.

    **B.    Mr. Smith.**

37. In 1990, Mr. Smith began working for FlightSafety at the Westover Air Reserve Base ("Westover ARB") in Chicopee, Massachusetts, as a loadmaster instructor for the C-5 Galaxy aircraft.

38. The C-5 is one of the largest aircraft in the world and the largest airlifter in the Air Force inventory, and can carry a fully equipped combat-ready military unit to any point in the world on short notice.

39. A loadmaster, who is part of the C-5 crew, supervises the uploading and downloading of C-5's cargo, and computes the weight and balance of the aircraft.

40. At all relevant times, FlightSafety has had a contract with the Air Force for the C-5 Aircrew Training System ("C-5 ATS"), which is used to train C-5 pilots, co-pilots, flight engineers, loadmasters, and maintenance engine run personnel.

41. FlightSafety uses instructors like Mr. Smith, who use the Air Force's facilities and equipment to train C-5 crews on aircraft flight manuals, operations, rules, instructions, regulations, performance standards, tactics, techniques and procedures associated with the aircraft.

42. Mr. Smith is an active Air Force reservist, and on October 1, 2004, he was activated and served on active duty through July 15, 2008, in support of operation Iraqi Freedom.

43. On August 8, 2008, Mr. Smith again entered active duty and served until December 31, 2010.

44. At the time he deployed, Mr. Smith was a participant in FlightSafety's 401(k) plan.

45. Under FlightSafety's 401(k) plan, FlightSafety matchs an employee's contribution equal to 50 percent of the 401(k) contributions made for the contribution period on behalf of a participating employee.

46. FlightSafety's matching contributions may not exceed four percent of the participating employee's compensation during a plan year, which is defined as a 12-consecutive-month period ending each December 31.

47. FlightSafety's 401(k) plan essentially provides a four percent matching contribution when an employee contributes eight percent of his compensation.

48. At all relevant times prior to his deployment, Mr. Smith contributed eight percent of his compensation to FlightSafety's 401(k) plan, and FlightSafety provided a four percent match to the same.

49. On February 11, 2011, Mr. Smith signed a military leave catch-up contribution form to make catch-up contributions to the 401(k) plan for the missed contributions he did not make while he was on active duty.

50. Mr. Smith agreed to contribute $254.55 per pay period for 130 payments, with a FlightSafety match of $137.27 per pay period, to the 401(k) plan for the contributions he missed while he was on active duty.

51. Mr. Smith only was able to make two catch-up contributions to the 401(k) plan, with FlighSafety's corresponding match.

52. In or around March 2011, as a condition of renewal of the C-5 ATS contract with the Air Force, FlightSafety agreed to subcontract a portion of the contract to a minority-owned company. FlightSafety chose DRG, a company under Native American ownership.

53. Under the subcontract with FlightSafety, DRG agreed to hire incumbent C-5 ATS instructors such as Mr. Smith. As a result, on or about March 31, 2011, FlightSafety administratively terminated Mr. Smith's employment and the next day he became an employee of DRG. As a DRG employee he continued to perform the same duties, in the same location, and under the same working conditions as he had with FlightSafety.

54. FlightSafety also terminated all of Mr. Smith's benefits, including the 401(k) plan, and Mr. Smith was unable to continue to make catch-up contributions to the FlightSafety 401(k) plan.

55. FlightSafety has retained control over Mr. Smith's employment opportunities as a DRG employee.

56. FlightSafety's "site manager," who is located at Westover ARB, exercises "operational control" and directs the daily activities of DRG personnel (including Mr. Smith), such as scheduling duties, assigning tasks, and directing actions of DRG employees.

57. The FlightSafety site manager currently Supervises Mr. Smith's daily activities and previously supervised Mr. Smith's daily activities, when he was directly employed by FlightSafety.

58. Upon information and belief, FlightSafety, through the site manager, controls the decision of whether DRG employees (including Mr. Smith) will be disciplined. Under the operational agreement between FlightSafety and DRG, FlightSafety notifies DRG management regarding any "DRG personnel behavior correction or counseling requirements," which DRG is then expected to implement.

59. FlightSafety's site manager continues to evaluate Mr. Smith's performance as an instructor, using a form called "instructor observation record."

60. FlightSafety also exercises control over DRG employees' leave requests. The FlightSafety site manager at Westover ARB approves Mr. Smith's vacation time and other types of leave.

61. Upon information and belief, FlightSafety controls whether DRG employees, including Mr. Smith, work overtime, or even whether DRG should hire additional part-time personnel.

62. There is also a substantial continuity of business operations at Westover ARB between FlightSafety and DRG.

63. DRG provides the same services to the Airforce as FlightSafety, at the same facility — Westover ARB — using the same equipment. Both FlightSafety and DRG employed or employ the C-5 ATS to train C-5 pilots, co-pilots, flight engineers, loadmasters, and maintenance engine run personnel.

64. There is a continuity of workforce between FlightSafety and DRG at Westover ARB; DRG hired a substantial number of incumbent FligthSafety C-5 ATS employees to continue to do the same work for DRG as they did for FlightSafety.

65. On October 31, 2011, Mr. Smith filed a complaint under USERRA with the DOL.

66. The DOL's Veterans' Employment and Training Service conducted an investigation, and found that Mr. Smith's claim had merit.

## FIRST CLAIM FOR RELIEF– FLIGHTSAFETY'S VIOLATION OF PLAINTIFFS' RIGHTS UNDER 38 U.S.C. § 4318

67. Plaintiffs incorporate the allegations set forth in paragraphs 1 through 66.

68. FlightSafety is Plaintiffs' joint "employer" with DRG under USERRA because, at all relevant times, it has retained control over Plaintiffs' employment opportunities. 38 U.S.C. § 4303(4)(A).

69. As Plaintiffs' employer, FlightSafety was required under USERRA to treat the period that Plaintiffs served with the Air Force as service with FlightSafety for the purpose of determining the nonforfeitability of their accrued benefits and the accrual of benefits to them under FlightSafety's 401(k) plan. 38 U.S.C § 4318.

70. FlightSafety was also required to accept "catch-up" contributions from Plaintiffs upon their return from military service and is liable to FlightSafety's 401(k) plan for the amount of any employer contribution for Plaintiffs in the same manner and to the same extent the allocation occurred for other employees during the period of Plaintiffs' service.

71. FlightSafety, as Plaintiffs' employer, violated USERRA by not allowing Plaintiffs to continue making catch-up contributions to the FlightSafety 401(k) plan, and by not matching such contributions, for the missed contributions they did not make while they were on active duty in armed forces.

## SECOND CLAIM FOR RELIEF AGAINST – DRG'S VIOLATION OF PLAINTIFFS' RIGHTS UNDER 38 U.S.C. § 4318

72.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 66.

73.     DRG is a successor in interest to FlightSafety and is therefore responsible for satisfying FlightSafety's USERRA obligations to Plaintiffs . 38 U.S.C. § 4303(4)(A).

74.      As a successor in interest to FlightSafety, DRG was required under USERRA to treat the period that Plaintiffs served with the Air Force as service with DRG for the purpose of determining the nonforfeitability of their accrued benefits and the accrual of benefits to them under DRG's 401(k) plan. 38 U.S.C § 4318.

75.     DRG was also required to honor the "military 401(k) make up contribution election form" executed by Plaintiffs and accept "catch up" contributions and contribute the employer match to Plaintiffs' 401(k) plans in the same manner and to the same extent that such allocations occurred for other employees during the period of Plaintiffs' service.

76.     DRG, as a successor in  interest to FlightSafety, violated USERRA by not allowing Plaintiffs to make catch-up contributions and by not matching such contributions for the contributions they missed while on active duty in the armed forces.

## THIRD CLAIM FOR RELIEF – FLIGHTSAFETY'S VIOLATION OF MR. SIPOS' RIGHTS UNDER 38 U.S.C. § 4318 and 26 U.S.C. § 414(u)

77.     Mr. Sipos incorporates the allegations set forth in paragraphs 1 through 4, and 6 through 36.

78.     FlightSafety, as Mr. Sipos' employer, violated USERRA by not allowing Mr. Sipos to make a lump sum catch-up contribution to the FlightSafety 401(k) plan, and by not matching such contribution, for the contributions he missed while he was on active duty in the Air Force.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that the Court:

a. Declare that FlightSafety is Plaintiffs' joint employer under USERRA because it retains control over their employment opportunities;

b. Declare that DRG is a "successor in interest" to FlightSafety and therefore responsible for FlightSafety's USERRA obligations to Plaintiffs;Order FlightSafety or DRG, or both, as Plaintiffs' employers under USERRA, to allow Plaintiffs to continue making catch-up contributions pursuant to the "military 401(k) make up contribution election form" they executed;

c. Order FlightSafety or DRG, or both, as Plaintiffs' employers under USERRA, to continue contributing the employer's share of Plaintiffs' catch-up contributions pursuant to the "military 401(k) make up contribution election form" they executed;

d. Award pre-judgment and post-judgment interest as allowed by USERRA;

e. Award Plaintiffs the costs of this suit; and

f. Grant such further and general relief as the Court deems just and proper under the law and the facts of this case.

                                        Respectfully submitted,

                                        THOMAS E. PEREZ
                                        Assistant Attorney General
                                        Civil Rights Division

                                        DELORA L. KENNEBREW
                                        Chief
                                        Employment Litigation Section

                                        JOHN F. WALSH
                                        United States Attorney


                                        <u>s/Juan G. Villaseñor</u>
                                        JUAN G. VILLASEÑOR
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        1225 Seventeenth Street, Suite 700
                                        Denver, Colorado  80202
                                        Telephone:  (303) 454-0185
                                        E-mail: juan.villasenor@usdoj.gov